Margot P. Cutter (SBN 16514)
**CUTTER LAW P.C.**
195 U.S. Highway 50
Zephyr Cove, NV 89448
Telephone: 916-290-9400
Facsimile: 916-588-9314
Email: mcutter@cutterlaw.com

Matthew A. Dolman (*pro hac vice forthcoming*)
R. Stanley Gipe (*pro hac vice forthcoming*)
Sara D. Beller (*pro hac vice forthcoming*)
**DOLMAN LAW GROUP**
800 N. Belcher Road
Clearwater, FL 33765
Telephone: (727) 451-6900
Facsimile: (724) 451-6907
Email: matt@dolmanlaw.com
Email: stan.gipe@dolmanlaw.com
Email: sara.beller@dolmanlaw.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JANE DOE C.H., an individual, | Case No: |
| Plaintiff, | **COMPLAINT** |
| v. | 1) NEGLIGENCE; |
| THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation; SCOTT JONES, an individual; and DOES 1-25, inclusive, | 2) NEGLIGENT HIRING, SUPERVISION, AND/OR RETENTION; |
| | 3) NEGLIGENT SUPERVISION OF A MINOR; |
| Defendants. | 4) BREACH OF MANDATORY DUTY; |
| | 5) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. |

///

Plaintiff, Jane Doe C.H. ("Plaintiff"), by and through counsel, respectfully brings this Complaint against Defendants The Church of Jesus Christ of Latter-day Saints ("the Church"), Scott Jones ("Jones"), and DOES 1-25 (hereinafter, collectively, "Defendants") and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and upon information and belief as to all other matters:

## INTRODUCTION

1. This case involves egregious sexual, physical, and emotional abuse of a child.

2. In or around 1998, Plaintiff was sexually assaulted, on numerous occasions, by a member of the Church, Scott Jones (hereinafter "Jones" or "the Perpetrator"). Plaintiff was sexually assaulted by Jones between the ages of 10-15.

3. Plaintiff brings this action to recover damages for the severe and lasting injuries arising from sexual abuse she suffered as a minor, including abuse that occurred while she was under Defendants' care, custody, control, and supervision.

4. The acts of sexual abuse and assault against Plaintiff described herein constitute unlawful sexual abuse and sexual exploitation of a minor under applicable law and give rise to civil liability. Defendants are liable for their own acts and omissions, as well as for failing to protect Plaintiff from foreseeable harm while she was in their care, custody, or control.

## PARTIES

5. **Plaintiff C.H.** ("Plaintiff") is an adult female and a resident of Washington County, Oregon. At all relevant times herein, Plaintiff was a minor and resident of Clark County, Nevada. The incidents and events giving rise to this action occurred in Clark County, Nevada.

6. Given the sensitive nature of the allegations in this action, Plaintiff brings this case using pseudonymous initials to protect her privacy as a victim of childhood sexual abuse, assault, harassment, and molestation. Plaintiff will seek leave of Court to proceed under a pseudonym pursuant to the Court's inherent authority..

7. **Defendant The Church of Jesus Christ of Latter-day Saints** ("Church") is a corporation organized and incorporated in the State of Utah. The Church functionally operates meeting houses, congregations, wards, and parishes within the State of Nevada, including Clark County.

Defendant Church does business with and conducts continuous and systemic activities in Nevada and is registered to do business in Nevada.

8. Within the Church, congregations are referred to as "wards" and are overseen by a Bishop, who serves at the pleasure of and subject to the direct and absolute control of Defendant Church. In this way, a Bishop is analogous to a priest in Catholicism. A group of wards in a geographical area create a "stake," which is comparable to a Catholic diocese. Each stake is overseen by a "stake president," akin to a bishop in Catholicism.

9. At all relevant times, Plaintiff was a member of the East Stake 1st Ward, located at 4040 E Wyoming Avenue, Las Vegas, NV 89104. Upon information and belief, the Church owns and operates the East Stake 1st Ward.

10. **Defendant Scott Jones** is an adult male and a resident of Nye County in Nevada. Defendant Scott Jones is Plaintiff's father, and the perpetrator of the abuse that she suffered, while Defendant Scott Jones was an employee and agent of Defendant Church. At all times relevant herein, Defendant Scott Jones was a member of the Church of the East Stake 1st Ward.

11. Defendants each assumed responsibility for the wellbeing of their members, prospective members, and invitees, whether as clergy or volunteers appointed by the Church. In their capacities as Bishop, and other positions such as Stake President, Relief Society President, Bishop, visiting teacher, Missionaries, Sunday School, and Primary School teacher; Defendants and their agents placed individuals in positions of responsibility and authority over Church members, prospective members, and invitees. As a result, they each had a special relationship with members, prospective members, and invitees of the congregation, including with the minor Plaintiff. This relationship gave rise to a duty to protect members, prospective members, and invitees of the congregation, including the minor Plaintiff from foreseeable risks of harm. At all relevant times, Defendants assumed special responsibilities towards their members, prospective members, and invitees including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership to protect innocent child members, prospective members, and invitees from the harm Defendants' agents or employees might inflict.

///

12. **Defendants DOES 1-25** were, at all times relevant, Church officials, employees, and/or agents under the Church's control, management, and supervision.

13. Defendants DOES 1-25 are sued herein under said fictitious names. Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1-25 and therefore sues said DOE Defendants by such fictitious names at this time. Each of the Defendants designated herein as a DOE Defendant is negligently, intentionally, or otherwise legally responsible in some manner for the events and happenings described herein that caused Plaintiff's injuries and damages. When ascertained, Plaintiff will seek leave of court to amend this Complaint to assert the true names, identities, and capacities of such DOE Defendants.

14. Plaintiff is informed and believes, and on that basis alleges, that at all times material herein, each and every Defendant was a principal, agent, servant, and/or other employee of each and every other Defendant, and/or under their complete control and active supervision. In doing the acts and/or omissions alleged herein, each of said Defendants acted within the course and scope of his, her, or its authority—whether actual or apparent—as a principal, agent, servant, and/or employee, co-conspirator, alter ego, aider and abettor, joint-venturer of each and every other Defendant, gave or received full consent, permission, and ratification to the acts and/or omissions alleged herein. Accordingly, each of them is jointly and severally liable to Plaintiff.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332 because there exists minimal diversity among the parties; Plaintiff is a citizen of Oregon, Defendant The Church of Jesus Christ of Latter Day Saints is a citizen of the State of Utah, and Defendant Scott Jones is a citizen of Nevada.

16. This Court has general personal jurisdiction over Defendants because each Defendant systematically and continually has conducted and continues to conduct business in Clark County and the State of Nevada. This Court also has specific personal jurisdiction over all Defendants in Nevada because the conduct at issue primarily occurred within the State of Nevada. Plaintiff was subjected to multiple acts of sexual assault and resulting injury within the State of Nevada. These acts were enabled by Defendant Scott Jones while he was acting within the course and scope of his role as an employee,

agent, servant, member, and/or volunteer of the Church. By committing tortious conduct in Nevada that gave rise to Plaintiff's claims, Defendants are subject to this Court's jurisdiction consistent with the due process of the Fourteenth Amendment of the United States Constitution.

17. Moreover, Defendants' minimum contacts with the State of Nevada illustrate that Defendants purposefully availed themselves of the benefits of conducting business in the State of Nevada, and , are such that at all times Defendants should have reasonably anticipated that Defendants' wrongful and/or tortuous conduct would cause them to be hailed into Nevada Court.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Clark County, Nevada. Additionally, Defendant Scott Jones resides in Nevada.

## STATUTE OF LIMITATIONS

19. This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 and/or § 1367. Pursuant to the doctrine established by *Erie Railroad Co. v. Tompkins* 304 U.S. 64 (1938), state substantive law controls as to the application and effect of state statutes of limitation. *See*, *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945); *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530 (1949). Accordingly, Nevada law governs the timeliness of Plaintiff's claims. Pursuant to NRS § 11.215(1), an action to recover damages for injury arising from sexual abuse or sexual exploitation of a minor may be commenced against the alleged perpetrator at any time after the sexual abuse or sexual exploitation occurred. Plaintiff's claims against Defendant Scott Jones arise from sexual abuse that occurred while Plaintiff was under the age of eighteen and are therefore timely under NRS § 11.215.

20. Plaintiff further brings claims against Defendant Church based on its acts and omissions giving rise to liability under Nevada law, including negligent hiring, supervision, retention, and failure to protect. Pursuant to NRS § 11.215(3), claims against non-perpetrator defendants must be commenced within 20 years after the plaintiff reaches the age of eighteen. Plaintiff's claims against the Church are timely because Plaintiff is currently under the age of 38.

21. NRS § 11.215(1) further provides that where the alleged injury results from a series of two or more acts constituting sexual abuse or sexual exploitation, the plaintiff is not required to identify

which specific act in the series caused the injury. Plaintiff alleges a course of sexual abuse occurring during her minority that resulted in lasting injury, likewise rendering her claims timely under Nevada law as applied in this federal action.

## FACTUAL ALLEGATIONS

### *History of Abuse in the Church*

22. Childhood sexual abuse is a serious issue that plagues the Church of Jesus Christ of Latter-Day Saints. Over the years, hundreds of survivors have come forward exposing the abuse they experienced within the Church's walls or at the hands of trusted Church leaders.[1] This lengthy history of abuse long preceded the abuse Plaintiff suffered when she was a member at the East Stake 1st Ward.

23. Not only have members of the Church repeatedly perpetrated sexual abuse on children within its wards, but the Church as an institution has also gone to extreme lengths to suppress reports of abuse. Most notably, in 1995 the Church established a 24/7 confidential "help line" with the sole purpose to contain allegations of sexual abuse within the Church.[2] Church policy dictates that officials, including stake presidents and bishops, "promptly call the help line about every situation in which a person may have been abused – or is at risk of being abused."[3] Church policy further instructs officials across all stakes and wards to seek guidance from the help line on handling situations of abuse or suspected abuse.[4] The help line is staffed by social workers who destroy records of all calls at the end

---

[1] *See, e.g.,* Jeremy Harris, *Mormon Church Child Leader Admits to Sex Abuse at Sleepovers he Hosted*, ABC 7 (June 14, 2022) https://katv.com/news/nation-world/mormon-church-child-leader-admits-to-sex-abuse-at-sleepovers-he-hosted-sexual-assault-child-abuse-psychosexual (a man who taught primary in a congregation of the LDS Church in West Jordan, Utah admitted to sexually abusing a girl from his ward); *$2.3 Billion Awarded in Sexual Abuse Case Involving Morning Church—but they Settled out Months Ago for $1 Million*, ASSOCIATED PRESS (April 28, 2023, https://fortune.com/2023/04/28/2-3-billion-sexual-abuse-case-jury-verdict-mormon-church-latter-day-saints/) (a woman who was molested as a child by her step-father on the property of her local Lake Elsinore LDS Church achieved a verdict in her favor); Christopher Smart, *Children's Charity Co-Founder Sentence in Sex Abuse Case*, THE SALT LAKE TRIBUNE (Nov. 3, 2011), https://archive.sltrib.com/article.php?id=17798173&itype=storyID (former LDS bishop was convicted of sexually abusing his adopted children for years); Gene Kennedy, *Former LDS Bishop Pleads Guilty to Sex Abuse*, KSL.COM, (Sept. 24, 2008), https://www.ksl.com/article/4355348 (former LDS bishop in Harrisville, Utah pled guilty to abusing several children in is church ward).
[2] Michael Rezendez, *Seven Years of Sex Abuse: How Mormon Officials Let it Happen*, THE ASSOCIATED PRESS (Aug. 4, 2022) https://apnews.com/article/mormon-church-sexual-abuse-investigation-e0e39cf9aa4fbe0d8c1442033b894660.
[3] *Abuse Help Line*, The Church of Jesus Christ of Latter-Day Saints, https://www.churchofjesuschrist.org/callings/church-safety-and-health/abuse-help-line (last visited Aug. 11, 2025).
[4] Rezendez, *supra* note 3.

of each day.[5] When the social workers receive a call about abuse that presents a risk to the Church, such as abuse perpetrated by a Church leader, help line staff refer the call to attorneys for the Church.[6] The attorneys then instruct callers not to report the abuse to law enforcement or child welfare officials.[7] In fact, the attorneys strictly advised the callers to do *nothing* about the alleged sexual abuse.[8] Although the Church leaders were obligated to report allegations of abuse, LDS attorneys would inform the leaders that they were exempted from reporting due to the protections of clergy/penitent privilege or attorney/client privilege.[9]

24. In one particularly egregious example, a member of the Church confessed that he had been raping his five-year-old daughter during a counseling session with his Bishop.[10] After he learned of the abuse, the Bishop followed Church policies and called the help line.[11] When he called, the LDS attorneys told the Bishop that he "absolutely can do nothing" about the sexual abuse and that he was legally bound to keep the abuse a secret because he learned of the abuse during a counseling session, which the Church considers a "spiritual confession."[12] Because the Church failed to intervene or report the abuse, the Church member continued to rape his daughter for another seven years and even went on to abuse a second daughter.[13] The abuse continued until Homeland Security arrested the Church member—without any assistance from the Church.[14]

25. The true nature of the "help line" was revealed when the Associated Press obtained nearly 12,000 pages of sealed records from a separate lawsuit against the Church, for allegations of child sex abuse that occurred in a ward in West Virgina.[15] The records revealed that the help line was part of an overarching system within the Church to divert allegations of abuse away from law

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] Peggy Fletcher Stack & Tamarra Kemsley, *Does the LDS Church's Sex Abuse Help Line Protect the Faith or the Victims? Debate Continues*, THE SALT LAKE TRIBUNE (Aug. 15, 2022), https://www.sltrib.com/religion/2022/08/15/whom-does-sex-abuse-help-line/.
[10] Rezendez, *supra* note 3.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

enforcement and toward Church attorneys, who could handle the issues internally.[16] In sworn statements, LDS Church officials confirmed that the social workers who staffed the help line do in fact *destroy* records of all calls at the close of every day.[17]

26. Additionally, there have been several reports of Church leaders who have actively discouraged Church members from reporting allegations of abuse and utilized manipulation tactics, such as shaming and gaslighting, to prevent them from doing so. One San Diego woman spoke up, demanding answers as to why the leaders of her LDS church turned a blind eye to the sexual abuse she endured as a child.[18] She said that in 1988 when she and her mother informed the Church leaders that her father, an LDS elder, had molested her, the Church leaders discouraged her from reporting the abuse to the police.[19] By shirking their duty to report the allegations of abuse to law enforcement as they are legally obligated, and working to actively conceal the situation, the LDS Church allowed the abuse to continue for 13 years.[20] Another sexual abuse survivor came forward and shared that the LDS Church frequently resorted to "intimidation and shaming tactics" to prevent her from speaking up about the abuse she repeatedly endured.[21]

27. Further, across the United States, civil and criminal charges are repeatedly brought against Church leaders for failing to report known allegations of child sexual abuse within their wards.[22]

28. These instances of abuse and the lengths that Church leaders would go to cover up these allegations establish that: (1) Defendants were aware of the risks of childhood sexual abuse in its wards, (2) the Church lacked policies and procedures to ensure safe and effective reporting of childhood sexual

---

[16] *Id.*
[17] *Id.*
[18] Dorian Hargrove, Carlo Cecchetto & Jon Stinebaugh, *Lawsuit: Mormon Church Leaders in San Diego Turned a Blind Eye to a Report of an Eldor Molesting his Daughter*, CBS 8 (Nov. 14, 2022), https://www.cbs8.com/article/news/investigations/woman-says-mormon-church-leaders-in-san-diego-failed-to-protect-her-from-sexual-abuse/509-fe7118ee-f39b-4136-a32f-d74200fe096a.
[19] *Id.*
[20] *Id.*
[21] *$2.3 Billion Awarded…*, *supra* note 1.
[22] *See, e.g.,* Aubree B. Jennings, George Stockburger & Seth Kaplan, *LDS Church Leader Faces Felony After Pennsylvania Police Say He did not Report Child Rape Allegations*, ABC 4 (Feb. 1, 2024), https://www.abc4.com/news/national/lds-church-leader-faces-felony-after-pennsylvania-police-say-he-did-not-report-child-rape-allegations/ (Pennsylvania LDS Church state president failed to report the sexual assault allegations of another LDS church leader in his stake).

abuse and (3) the Church, in full view of the history of abuse perpetrated by its members, agents, and employees, actively disregarded, minimized, and concealed further instances of child abuse, including the abuse perpetrated against Plaintiff.

### *Specific Allegations of Sexual Abuse*

29. Growing up, Plaintiff and her family were devout members of the Las Vegas, Nevada East Stake, 1st Ward. In approximately 1995, when Plaintiff was only ten (10) years old, she endured repeated acts of sexual and physical assault perpetrated by her father, Defendant Scott Jones (hereinafter, "Defendant Jones") which lasted until she was fifteen (15) years old.

30. At all times relevant herein, Defendant Jones was a member of the East Stake 1st Ward and held the position of a High Priest within the Church. A High Priest is an ordained adult male member who is entrusted with significant spiritual authority and leadership responsibilities, including teaching, counseling, and providing guidance to members of the congregation.

31. When Plaintiff was ten (10) years old, Defendant Jones started to physically assault and sexually prey on Plaintiff. The first instance of sexual abuse occurred when Plaintiff was ten (10) years old, when Defendant Jones digitally penetrated her.

32. For the next five years, Defendant Jones continued to prey upon Plaintiff with zero interference from the Church or any other Defendants.

33. In or about 1999, when Plaintiff was approximately fourteen (14) years old, she disclosed the abuse to the Bishop of the East Stake 1st Ward. Rather than report the abuse to authorities or ensure Plaintiff's safety, the Bishop instructed her to not contact law enforcement and assured her that the Church would "handle" the situation. Instead, the Church told Defendant Jones about Plaintiff's disclosure and took no meaningful action to protect Plaintiff or prevent further harm.

34. The sexual and physical abuse continued after Plaintiff's disclosure to the Church and persisted until Child Protective Services removed Plaintiff from her home approximately one month before her sixteenth (16th) birthday.

35. When Plaintiff disclosed the abuse as a child, the very institution she trusted for guidance and protection failed her—which only compounded her injuries. Defendants' actions and inactions after Plaintiff's disclosure allowed the abuse to continue and directly contributed to the severe

and enduring harm Plaintiff has suffered and continues to suffer.

*Special Relationship*

36. A special relationship in tort exists between a church, its religious leaders, and its parishioners. Parishioners are encouraged to trust religious leaders' knowledge, prudence, experience, and character, and are taught to view these individuals as an extension of God, or other religious beings. Religious leaders are held in extremely high regard because of the very role they occupy within the larger church organization. This authority and reverence are bestowed upon them by the religious organization.

37. At all times relevant herein, as a member of the Church, Plaintiff placed her trust and confidence in the Church and its leaders, at said leaders' request. By holding out its leaders and hierarchal members as its agents, whom the Church placed in positions of authority and responsibility over members of the church, including Plaintiff, a special relationship between Defendants and Plaintiff was then and there created. Accordingly, Defendants owed Plaintiff a heightened duty to protect her from foreseeable harm that flowed as a direct consequence of this special relationship between the Church, its religious leaders, and Plaintiff..

38. By establishing and operating the East Stake 1st Ward, holding Church facilities and services out as a safe environment for members, Defendants voluntarily assumed the care and supervision of Plaintiff. As such, Defendants, and each of them, owed a duty to protect Plaintiff from foreseeable harm.

39. Accordingly, Defendants owed heightened duties of care to protect Plaintiff's health, safety, and wellbeing while she was under the care, supervision, or in the presence of the Church's employees and/or agents. These heightened duties encompassed the protection and supervision of Plaintiff, the enforcement of rules and regulations necessary to ensure Plaintiff's protection, and the provision of a safe environment for Plaintiff while she was under Defendants' care, custody, and/or supervision.

40. At all times relevant herein, a special relationship likewise exists between the Church and its leaders/employees, including Defendant Jones and DOES 1-25, whether as employer to employee and/or principal to agent. This special relationship exists because the Church exercises an

extraordinary degree of control over the leaders it selects to work within its wards. Accordingly, at all relevant times herein, a special relationship existed between the Church and Defendant Jones and DOES 1-25, whether via employer-employee and/or principal-agent, in which the Church owed a duty to control the acts and conduct of its agents to prevent foreseeable harm to Plaintiff.

### *Notice – Foreseeability*

41. At all relevant times, Defendant Scott Jones was a member of the Church acting within Church-sponsored activities and settings, and was subject to the Church's authority, policies, and standards of conduct. The Church exercised control over the environments, programs, and activities in which Jones had access to minors and therefore bore responsibility for the supervision, monitoring, and restriction of Jones's conduct within those settings.

42. Defendants had actual notice of specific and heightened risks posed by Defendant Scott Jones. Plaintiff disclosed Defendant Jones' misconduct and predatory behavior to the Bishop during the ongoing course of abuse described herein, which created the risk of childhood sexual assault by a volunteer, representative, or agent. In response, Defendant Church failed to take reasonable steps or implement reasonable safeguards to avoid acts of childhood sexual assault.

43. Furthermore, at all relevant times herein, Defendants knew, or in the exercise of reasonable care should have known, that Plaintiff was particularly vulnerable and susceptible to sexual abuse and harassment at the hands of Defendant Jones. Specifically, because of Defendant Jones' status, unfettered access to Plaintiff, and Plaintiff's disclosure regarding Jones's misconduct, it was reasonably foreseeable that the Perpetrator would commit acts of sexual abuse or harassment against minors under the care and supervision of the Church.

44. Further, Defendants knew or should have known that there was a systemic failure of supervision and management of its officials and agents throughout LDS wards and stakes due to the lengthy history of sexual abuse within the LDS Church. Based on the pervasiveness of sexual abuse within the religious organization, especially between LDS Church leaders and parishioners, Defendants knew or should have known that its leaders and members were reasonably likely to engage in such abusive behavior against minor parishioners.

45. At all relevant times herein, Defendants knew or should have known that they did not

have reasonable safeguards in place to adequately protect its minor parishioners, including Plaintiff, from sexual abuse and harassment. Absent adequate safeguards and reporting policies and procedures, it was reasonably foreseeable to Defendants that such acts of sexual abuse and harassment would occur.

46. Based on the foregoing, at all relevant times, Defendants knew or should have known that children in their care were subject to a substantial risk of maltreatment and abuse, including acts of sexual assault and abuse.

### *Breach*

47. Upon information and belief, and at all relevant times herein, Defendants failed in all aspects of their obligations, including in the hiring, training, retention and supervision of Defendant Jones, as detailed herein. Included in these failures, Defendants failed to:

   a. Reasonably supervise and monitor minor children under Defendants' care and supervision;

   b. Protect Plaintiff from reasonably foreseeable harm;

   c. Provide Plaintiff with a safe church environment where she would not be subjected to repeated acts of sexual assault;

   d. Establish and implement adequate programs, policies, and procedures in the exercise of reasonable care for the protection of minor children in the Church's care and the prevention of sexual assault;

   e. Establish and implement adequate programs, policies, and procedures to ensure that reports of sexual harassment and assault are investigated and addressed, such that corrective actions are taken and an individual is not repeatedly subject to the same form of harassment and assault;

   f. Adequately train its clergy officials and employees in said programs, policies, and procedures; and

   g. Supervise and minor the Church's clergy officials and employees to ensure adherence to such programs, policies, and procedures, as well as the overall safety of its wards.

48. The response to the report of abuse Plaintiff suffered illustrates that there was a practice within the Church of suppressing reports of sexual abuse. Had the Church ensured that its leaders and

officials were following safe policies and procedures, the leading figures at the Newbury Park – Ward II would not have been able to suppress and cover up the abuse perpetrated against Plaintiff.

49. At all relevant times herein, the Church leaders' actions and inactions alleged herein occurred within the scope of their employment and/or agency with the Church and while acting within their roles as selected leaders of the Church.

### *Plaintiff's Economic and Non-Economic Damages*

50. As a direct and proximate result of Defendants' tortious acts, omissions, and breaches of their respective duties, Plaintiff has suffered and continues to suffer substantial economic and non-economic damages.

51. Plaintiff experiences a range of mental health issues stemming from the sexual assault she endured, such as severe emotional distress and anguish, trust issues, thoughts of self-harm, suicidal ideations, depressive symptoms, sexual compulsivity, and feelings of inadequacy, feelings of shame and guilt, and other injuries, damages (both economic and non-economic), and permanent disability.

52. The injuries and damages suffered by Plaintiff are specific in kind to Plaintiff, substantial, special, peculiar, and above and beyond those injuries and damages suffered by the public.

### **FIRST CAUSE OF ACTION**

*Negligence*

**(Against Defendant Church and DOES 1-25)**

53. Plaintiff re-alleges and incorporates by reference herein each allegation contained in all other sections of this Complaint as though set forth in this cause of action.

54. Defendants owed special duties to their parishioners, including Plaintiff, who placed their trust and confidence in their religious organization and its leaders. Defendants also owed a duty to protect the children they voluntarily undertook to care for and supervise. The duty to protect Plaintiff arose from the special, trusting, confidential, fiduciary relationship between Plaintiff and Defendants.

55. Due to the special relationship that existed, Defendants owed a duty to adequately supervise and monitor Plaintiff while she was in the presence of and under the supervision of Church leaders and officials, provide Plaintiff with a safe environment while she was under the supervision of

Church leaders and officials, establish policies and programs to protect its parishioners from sexual abuse, require reporting of allegations of sexual harassment and assault, require corrective action when such reports are made, train employees, including Stake Presidents and Acting Bishops, on how to implement these policies and program, and adequately supervise employees to ensure their compliance with these programs and policies.

56. Defendants breached their duties of care to Plaintiff by way of multiple acts and/or omissions, including but not limited to: failing to properly hire, train, retain, and supervise Church leaders and officials; failing to supervise and monitor Plaintiff so as to protect her from foreseeable sexual abuse; failing to implement reasonable safeguards to prevent abuse from occurring at the hands of Church members; and failing to take corrective action to prevent and report foreseeable sexual abuse at the East Stake 1st Ward.

57. As a result of Defendants' negligence, Plaintiff was sexually abused by the Perpetrator.

58. Had Defendants fulfilled their duties and responsibilities to Plaintiff required of them pursuant to the special relationship they had with minor Plaintiff, she would not have been subjected to the sexual misconduct and abuse she ultimately endured. .

59. As a direct and proximate result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION

*Negligent Supervision and Retention*

**(Against Defendant Church and DOES 1-25)**

60. Plaintiff re-alleges and incorporates by reference herein each allegation contained in all other sections of this Complaint as though set forth in this cause of action.

61. At all relevant times, Defendant Church exercised authority, control, and oversight over its members' participation in Church-sponsored programs, activities, and environments, including those involving minors. Through its policies, practices, and decision-making structures, the Church had

the ability to supervise, monitor, restrict, discipline, and remove members from positions or circumstances that provided access to minors.

62. Defendant Scott Jones was a member of the Church who held the position of High Priest, an ordained leadership role carrying spiritual authority, trust, and responsibility within the congregation. By virtue of this position, the Church bestowed upon Defendant Jones credibility, respect, and access within Church-controlled settings and activities. As a result of the Church's actions and omissions, Defendant Jones was permitted continued access to minors within Church environments.

63. Defendants knew or should have known that individuals placed in positions of spiritual authority and trust, including High Priests, required heightened supervision and safeguards when interacting with minors. Further, Defendants knew or should have known that Defendant Jones posed an unreasonable risk of harm to minors, and that reasonable supervision, monitoring, and protective measures were required to prevent foreseeable injury to minors with whom Defendant Jones interacted. Despite this, Defendants failed to exercise reasonable care in supervising and retaining Defendant Jones, by placing him in a position that provided 1-on-1 access to minors, including by failing to impose appropriate restrictions, safeguards, or prohibitions on his participation in certain activities with a heightened risk of sexual abuse.

64. The Church and DOES 1–25, either themselves or by and through their employees and/or agents, were responsible for implementing, overseeing, and enforcing the Church's policies and practices regarding member supervision, discipline, and access to minors, and at all relevant times acted within the course and scope of their roles on behalf of the Church.

65. At all relevant times, Defendants failed to establish, implement, or enforce reasonable systems, policies, or procedures to adequately investigate allegations of misconduct by members, monitor member conduct within Church programs, or protect minors from foreseeable risks of sexual abuse.

66. By failing to exercise reasonable care in supervising and regulating Jones's participation in Church activities and environments involving minors, the Church and DOES 1–25 breached their duties of care owed to Plaintiff.

67. As a direct and proximate result of the acts and omissions of the Church and DOES 1–25, Plaintiff sustained severe emotional distress and anguish, trust-related injuries, generalized anxiety disorder, feelings of shame and guilt, and other physical and emotional injuries and damages, both economic and noneconomic, including permanent injury, all of which were substantial, continuing, and will persist into the future.

### THIRD CAUSE OF ACTION

*Negligent Supervision of a Minor*

**(Against Defendant Church and DOES 1-25)**

68. Plaintiff re-alleges and incorporates by reference herein each allegation contained in all other sections of this Complaint as though set forth in this cause of action.

69. By virtue of Plaintiff's special relationship with Defendants and DOES 1-25, Defendants owed Plaintiff a duty to reasonably and adequately supervise her and protect her from foreseeable harms while she was under Defendants' supervision and care.

70. Defendants and DOES 1-25 breached their duty to adequately protect Plaintiff by way of multiple acts and omissions, including but not limited to: failing to monitor and supervise Plaintiff; failing to adopt or implement reasonable safeguards to prevent Defendant Jones from being alone and unsupervised with Plaintiff when she was a minor, and under Defendants' care and supervision.

71. Defendants and DOES 1-25 failed to take reasonable steps or implement reasonable safeguards to adequately monitor and supervise Plaintiff while she was under Defendants' care and supervision, and as such, were a legal cause of the sexual assault and abuse that resulted in injury to Plaintiff.

72. Defendants and DOES 1-25 knew or should have known how children, including Plaintiff, were highly vulnerable to sexual grooming, assault, and abuse perpetrated by trusted religious figures, including Defendant Jones. Defendants and DOES 1-25 knew, or had reason to know, or were otherwise on notice of Defendant Jones' misconduct that created a risk of sexual grooming, assault, and abuse against Plaintiff.

73. It was reasonably foreseeable to Defendants and DOES 1-25 that failing to adequately supervise and monitor children under Defendants' supervision and care may result in the sexual abuse

and assault of the same children, including Plaintiff.

74. As a direct and proximate result of Defendants and DOES 1-25's conduct, Plaintiff sustained severe emotional distress and anguish, trust issues, generalized anxiety disorder, feelings of shame and guilt, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future, for which this claim is made. The injuries suffered by Plaintiff are substantial, continuing, and permanent.

## FOURTH CAUSE OF ACTION

*Breach of Mandatory Duty: Failure to Report Suspected Child Abuse*

**(Against Defendant Church and DOES 1-25)**

75. Plaintiff re-alleges and incorporates by reference herein each allegation contained in all other sections of this Complaint as though set forth in this cause of action. This Court exercises jurisdiction over this action pursuant to 28 U.S.C. § 1332 and/or § 1367. Under the *Erie* doctrine, federal courts apply state substantive law to state-law claims. Nevada law therefore governs the duties at issue herein.

76. Defendants, acting through their employees, agents, and/or persons acting on their behalf, were at all relevant times mandated reporters pursuant to NRS §§ 432B.220–432B.240, Nevada's child abuse and neglect reporting statutes. As mandated reporters of suspected child abuse or neglect, Defendants were legally obligated to report reasonably suspected incidents of child abuse or neglect to law enforcement or child protective services promptly and in accordance with Nevada law.

77. Defendants, acting through their employees, agents, and/or persons acting on their behalf, had, or reasonably should have had, knowledge or reasonable cause to believe that the Perpetrator was engaged in sexual misconduct involving a minor, yet failed to report the suspected abuse to the appropriate authorities.

78. Defendants' employees, agents, and/or persons acting on their behalf violated Nevada's mandatory reporting statutes, NRS §§ 432B.220–432B.240. At all relevant times, such individuals were acting within the course and scope of their employment, agency, or authority, and Defendants are therefore liable for the resulting harm caused by these violations.

79. By failing to report suspected child abuse, Defendants allowed Defendant Jones to continue, unhindered, in his sexual abuse of Plaintiff.

80. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## FIFTH CAUSE OF ACTION

*Intentional Infliction of Emotional Distress*

**(Against Defendant Jones)**

81. Plaintiff re-alleges and incorporates by reference herein each allegation contained in all other sections of this Complaint as though set forth in this cause of action.

82. At all relevant times, Defendant Jones was Plaintiff's biological father and stood in a position of trust, authority, and control over Plaintiff.

83. While Plaintiff was a minor, Defendant Jones repeatedly and intentionally subjected Plaintiff to sexual assault and abuse.

84. Defendant Jones' acts of sexual abuse against a minor constitute conduct that is extreme and outrageous, and that which exceeds all bounds tolerated in a civilized society.

85. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and DOES 1-25, and each of them, as follows:

1. For special damages, according to proof;
2. For past and future general damages, including physical pain, mental anguish,

disfigurement and physical impairment, according to proof;

3. For past and future lost earnings and/or earning capacity, according to proof;

4. For costs of suit incurred herein; and

5. For such other relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.

Dated: January 20, 2026                                Respectfully submitted,


By: /s/ *Margot Cutter*
Margot P. Cutter (SBN 16514)
**CUTTER LAW P.C.**
195 U.S. Highway 50
Zephyr Cove, NV 89448
Telephone: 916-290-9400
Facsimile: 916-588-9314
Email: mcutter@cutterlaw.com

**DOLMAN LAW GROUP**
Matthew A. Dolman*
R. Stanley Gipe*
Sara D. Beller*
800 N. Belcher Rd.
Clearwater, FL 33765
Telephone: (727) 451-6900
Facsimile: (727) 451-6907
Email: matt@dolmanlaw.com
Email: stan.gipe@dolmanlaw.com
Email: sara.beller@dolmanlaw.com

*Attorneys for Plaintiff*

**Pro Hac Vice* motions forthcoming