**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Jane Doe C.H.,

Plaintiff

v.

The Church of Jesus Christ of Latter-Day Saints; and Scott Jones,

Defendants

Case No.: 2:26-cv-00123-JAD-BNW

**Order Granting Motion to Dismiss with Limited Leave to Amend**

[ECF No. 21]

Plaintiff Jane Doe C.H. seeks to hold the Mormon Church responsible for failing to stop the abuse that she was enduring as a child from her church-member father, claiming that she reported the abuse to her bishop, who told her to keep quiet and that he would handle it. So along with claims against her father, she sues the Church of Jesus Christ of Latter-Day Saints for negligence and violating Nevada's mandatory-reporter statute. The church moves to dismiss the claims against it, arguing that Doe's negligence claim fails because she hasn't identified a duty that the law imposed on it and that she can't bring a mandatory-reporter claim because the statute does not authorize one. Because Doe fails to allege a duty that the church owed her, and the legislative history and purpose of the mandatory-reporting laws suggest that it does not afford a private right of action, I grant the motion to dismiss with limited leave to amend.

## Background[1]

### A. Doe alleges that she reported her father's abuse to her bishop, who promised to help but instead reported her disclosure to her abuser.

Growing up in Las Vegas, Doe and her family were "devout members" of the East Stake, 1st Ward of the LDS Church.[2] Her father held the position of "High Priest," "an ordained adult male member who is entrusted with significant spiritual authority and leadership responsibilities, including teaching, counseling, and providing guidance to members of the congregation."[3] Doe alleges that when she was ten years old, her father began to physically assault and sexually prey on her, and that this abuse continued for five years "with zero interference from the church or any other defendants."[4] When she was fourteen, Doe disclosed the abuse to the bishop of her ward, who "instructed her not to contact law enforcement and assured her that the church would 'handle' the situation."[5] Instead, he told Doe's father about her report and "took no meaningful action to protect [her] or prevent further harm."[6] So she continued to suffer her father's abuse until Child Protective Services removed her from his home when she was sixteen years old.

### B. Doe sues the LDS church for mandatory-reporting failures and three varieties of negligence.

Doe sues the church for negligence under several theories. She first asserts a claim for common-law negligence, asserting that the church "owed [her] a duty to adequately supervise

---

[1] These facts are merely a summary of the plaintiff's allegations; they are not intended as findings of fact.

[2] ECF No. 1 at 9, ¶ 29.

[3] *Id.* at ¶ 30.

[4] *Id.* at ¶ 32 (cleaned up).

[5] *Id.* at ¶ 33 (cleaned up).

[6] *Id.*

and monitor [her] while she was in the presence of and under supervision of church leaders and officials."[7] She also pleads a claim for negligent supervision and retention, arguing that it had "the ability to supervise, monitor, restrict, discipline, and remove members from positions or circumstances that provided access to minors," but it failed to "exercise reasonable care in supervising and retaining" her father, who held a position that gave him one-on-one access to minors.[8] Doe's third negligence claim is for negligent supervision of a minor, theorizing that the church had a duty to "reasonably and adequately supervise her and protect her from foreseeable harms while she was under [its] supervision and care" and that it breached this duty by not taking steps to ensure that she was not alone with her father when she was a minor and under the care of the church.[9] Finally, Doe claims that the bishop failed to report her abuse in violation of Nevada's mandatory-reporting statutes, Nevada Revised Statutes (NRS) §§ 432B.220–240.[10]

**C. The church moves to dismiss all claims against it.**

The church asks the court to dismiss all of Doe's claims against it. It challenges her negligence claims for lack of a recognized legal duty that it breached.[11] The church explains that "no court has ever held that churches have a general duty to protect their congregants from each other's crimes, much less to control parents' behavior simply because they are members of a church."[12] It points out that Nevada law does not recognize the tort of negligent supervision of a minor, and if it were to recognize such a cause of action, it would likely be to protect against

[7] *Id.* at 14, ¶ 55 (cleaned up).

[8] *Id.* at 15, ¶ 63.

[9] *Id.* at 16, ¶ 69.

[10] *Id.* at 17.

[11] ECF No. 21 at 1–2.

[12] *Id.* at 1.

actions *by* minors, not *against* them.[13] As to Doe's negligent-supervision claim, the church concedes that there may be situations in which an organization owes a child a duty, like when parents relinquish control of their child to the church (such as at a campout or youth group). Here, however, the perpetrator was the child's own parent, and she does not allege that any abuse took place at the church or during a church-sponsored event.[14] Finally, the church argues that Doe can't bring a civil action for violation of NRS 432B because the statute provides only criminal penalties; it does not authorize a private right of action.[15]

**Discussion**

Federal pleading standards require a complaint to include enough factual detail to "state a claim to relief that is plausible on its face."[16] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation";[17] plaintiffs must make direct or inferential factual allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[18] A complaint that fails to meet this standard must be dismissed.[19]

**A. All three of the negligence claims are rife with deficiencies.**

Doe's first cause of action is a garden-variety negligence claim.[20] To "prevail on a negligence theory, a plaintiff must generally show that (1) the defendant owed a duty of care to

---

[13] *Id.* at 8–9.

[14] *Id.* at 1–2.

[15] *Id.* at 9.

[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

[19] *Twombly*, 550 U.S. at 570.

[20] ECF No. 1 at 13.

the plaintiff, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injury, and (4) the plaintiff suffered damages."[21] "No duty is owed to control the dangerous conduct of another or to warn others of the dangerous conduct" unless a special relationship exists between the defendant and the victim and the harm created by the defendant's conduct is foreseeable.[22] The Nevada Supreme Court has recognized a small handful of special legal relationships, like innkeeper-guest, teacher-pupil, and employer-employee.[23] The rationale behind the special-relationship duty is that when "the ability of one [party] to provide for his own protection has been limited in some way by his submission to the control of the other, a duty should be imposed upon the one possessing control . . . to take reasonable precautions to protect the other one from assault by third parties."[24] So "the element of control is the pivotal factor in the determination of liability . . . ."[25]

Doe's negligence claim rests on the premise that churches owe a special duty of care to their parishioners, particularly minor children.[26] But Doe has not identified in her complaint or her opposition any authority to support the legal validity of her duty theory, nor does she explain why the law would afford the relationship between bishop and church member special status. Although Doe alleges that the church "placed individuals in positions of responsibility and

---

[21] *Scialabba v. Brandise Constr. Co.*, 921 P.2d 928, 930 (Nev. 1996).

[22] *Sanchez ex rel. Sanchez v. Wal–Mart Stores, Inc.*, 221 P.3d 1276, 1280–81 (Nev. 2009); *see also Visnovits v. White Pine Cnty. Sch. Dist.*, 2015 WL 1806299 at *4 (D. Nev. Apr. 21, 2015) (applying the rule to a peer-on-peer attack at a middle school).

[23] *Sims v. Gen. Telephone & Elec.*, 815 P.2d 151, 157 (Nev. 1991) (citing *Prosser and Keeton on Torts* § 56, at 376 (5th ed. 1984)).

[24] *Scialabba*, 921 P.2d at 930 (quoting *Kline v. 1500 Massachusetts Ave. Apartment Corp.*, 439 F.2d 477, 482–483 (D.C. Cir. 1970)).

[25] *Id.*

[26] ECF No. 1 at 10, ¶ 37.

authority over church members, prospective members, and invitees of the congregation,"[27] those allegations do not show that church leaders had control sufficient to establish a special relationship. So Doe's negligence theories based on the church's alleged duty to protect her fail because she has not shown that the law recognizes such a duty in these circumstances.

Doe's second cause of action for negligent supervision and retention fails because the injury she alleges doesn't flow from the church's breach of a duty to supervise her father as an employee. While she alleges that the church "failed to exercise reasonable care in supervising and retaining" her father, "by placing him in a position that provided 1-on-1 access to minors,"[28] she doesn't allege that the abuse she suffered occurred in the church environment. A negligent-supervision-and-retention claim is just a poor fit for these allegations. And because Doe does not connect her abuse to the church's obligations as an employer and her father's role as an employee, I dismiss this claim without leave to amend because it appears that amendment would be futile.

The third negligence theory that Doe relies on is negligent supervision of a minor. She alleges that the church failed "to monitor and supervise" her or "adopt or implement reasonable safeguards to prevent" her father "from being alone and unsupervised with [her] when she was a minor. . . ."[29] But Doe has not established that the law imposes on the church a duty to protect a minor parishioner from her own parent and guardian either at the church or anywhere else. So I dismiss this third cause of action for failure to state a plausible claim, and I do so without leave to amend because amendment would be futile.

---

[27] *Id.* at 3, ¶ 11 (cleaned up).

[28] *Id*. at 15, ¶ 63.

[29] *Id*. at ¶ 70.

**B. Doe is granted limited leave to amend her negligence claim to assert a voluntary undertaking theory.**

In her response to the motion to dismiss, Doe narrows the scope of the duty she alleges, contending that the bishop's affirmative acts of telling her not to call the police and that he would handle the situation show that the church voluntarily undertook responsibility to protect her, giving rise to the requisite legal duty for her negligence claim.[30] While this theory is based on numerous unpled facts[31] and thus can't be a basis to deny the church's motion to dismiss,[32] it does provide a reason to grant leave to amend.

The church argues that this voluntary undertaking theory isn't sufficient because Nevada courts have never applied the theory to facts like those presented here.[33] But the absence of a case on point does not mean the theory cannot be applied to these facts. As the church acknowledges in its reply brief, Nevada's voluntary undertaking cases "address situations where the defendant assumes a duty of care and has either legal or practical control over the person causing harm or the dangerous situation."[34] And I am not convinced that Doe can plead no set of facts to show that this was such a situation. So although I dismiss all three of the plaintiff's negligence claims, I grant her leave to amend her first cause of action to plead a single negligence claim against the church based on this theory.

---

[30] ECF No. 23 at 2.

[31] *See* ECF No. 27 at 8 (listing these unpled factual allegations).

[32] *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

[33] ECF No. 27 at 2.

[34] *Id*. at 3.

**C. Nevada's mandatory-reporter statute does not afford a private right of action.**

Doe's fourth and final claim against the church is for breach of the mandatory duty in NRS 432B.220–240 to report child abuse.[35] The parties disagree over whether Nevada's mandatory-reporter statute provides a private right to sue for such a violation. The statute does not expressly provide one. As the Nevada Supreme Court explained in *Baldonado v. Wynn Las Vegas, LLC*, "in the absence of plain, clear language" establishing an explicit cause of action, a court can assess whether the Nevada Legislature intended to create an "implied" cause of action by "examin[ing] the entire statutory scheme" as well as the "reason" and "public policy" behind the statute.[36] *Baldonado* directs courts to consider three factors: (1) "whether the plaintiffs are 'of the class for whose special benefit the statute was enacted'; (2) whether legislative history indicates any intention to create or deny a private remedy; and (3) whether implying such a remedy is 'consistent with the underlying purpose of the legislative scheme.'"[37]

In moving to dismiss this claim, the church argues that all three factors weigh in its favor. The first factor, it argues, is not satisfied because "the mandatory-reporting statute was not intended to give rights to abused children" and instead "balances several competing goals: to protect abused and neglected children, obviously, but also 'to establish judicial procedures to protect the rights of parents and children' and 'to provide a system for the services necessary . . .

---

[35] ECF No. 1 at 17.

[36] *Baldonado*, 194 P.3d at 101.

[37] *Id.* (quoting *Sports Form, Inc. v. Leroy's Horse & Sports Place*, 823 P.2d 901, 902 (Nev. 1992)) (alterations omitted) (internal quotation marks omitted). The Nevada Supreme Court adopted this test from the U.S. Supreme Court's holding in *Cort v. Ash*, 422 U.S. 66, 78 (1975). And while the federal courts departed from *Cort*, as stated in *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11 (1979), there is no indication that Nevada followed suit.

if appropriate, to preserve and stabilize the family.'"[38] The church explains that the law includes provisions dealing with an appeals process, assessments, counseling, and other family services, and that it "establishes an administrative process for evaluating and helping families [if] abuse is suspected."[39]

But these provisions do not mean that the legislature did not intend to confer a right on abused children as a class. In the cases the church identifies to distinguish fact patterns in which the Nevada Supreme Court did recognize a class, the people the statutes are helping are adults who are not in the kind of vulnerable position that children experiencing sexual abuse are in.[40] The point of the mandatory-reporter statute is to protect abused children, and the administrative goals in the statute facilitate that goal. So the first *Baldonado* factor weighs in favor of Doe.

The other factors do not support recognizing a private right of action. To begin with, "the absence of an express provision providing for a private cause of action . . . strongly suggests that the Legislature did not intend to create a privately enforceable judicial remedy."[41] The church points out that the question of civil liability was before the legislature, as a psychologist testified on behalf of himself and other mental-health professionals that the statute should include a civil-liability provision.[42] Doe responds that the legislative body's "decision not to adopt a specific proposed amendment does not compel the conclusion that it intended to foreclose all civil remedies" and points out that NRS 432B.160 grants immunity from civil

[38] ECF No. 21 at 11 (citing Nevada Legislature Research Division, *AB199 – 63rd Session (1985)*, at 1).

[39] *Id.*

[40] ECF No. 21 at 10–11 (citing *Neville v. Eighth Jud. Dist. Ct.*, 406 P.3d 499, 504 (Nev. 2017), and *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct.*, 520 P.3d 803, 811–12 (Nev. 2022)).

[41] *Baldonado*, 194 P.3d at 101–02.

[42] ECF No. 21 at 12.

liability to individuals who "make a report, cooperate with an investigation, or take other authorized actions under Chapter 432B."[43] Doe cites cases in which Washington state courts found that "a grant of immunity from liability clearly implies that civil liability can exist in the first place."[44] But as the church points out, this provision likely seeks to provide immunity from civil liability for those who *do* report child abuse, not those who *do not*, and the fact that the Nevada Legislature considered but did not ultimately include an express civil-liability provision in the bill suggests that the lawmakers did not intend for a private right of action to be available.[45] Plus, NRS 432B.240, entitled "Penalty for failure to make report" expressly prescribes only criminal penalties, stating that "Any person who knowingly and willfully violates the provisions of NRS 432B.220 is guilty of (1) For the first violation, a misdemeanor[; and] (2) For each subsequent violation, a gross misdemeanor."[46] So the second *Baldonado* factor weighs in favor of the church.

The text of the statute itself, which the U.S. Supreme Court directs courts to consider when divining legislative intent,[47] confirms that an implied private right of action is not in line with the statute's legislative purpose. The legislature chose to delegate enforcement to the government, and to lay out extensive administrative processes to identify and deal with instances

---

[43] ECF No. 23 at 14.

[44] *Id*. (quoting *Beggs v. State, Dep't of Soc. & Health Servs.*, 247 P.3d 421, 425 (Wash. 2011)).

[45] *See Baldonado*, 194 P.3d at 101–02.

[46] Nev. Rev. Stat. § 432B.240.

[47] *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001) (reasoning that courts should use canons of statutory construction "to help determine the Legislature's intent as embodied in particular statutory language.").

of child abuse. The court must assume it did so for a reason.[48] State courts around the country have also found that there is no implied private right of action in their states' analogs.[49] The New Hampshire Supreme Court, for example, explained that "imposition of civil liability for all reporting violations would represent a sharp break from the common law and neither the statute nor the legislative history directly reveal any such intent," so the court was unwilling to read an implied private right of action into the statute.[50] I find that reasoning persuasive and adopt it here. Because there is no private right to bring a lawsuit for a violation of Nevada's mandatory-reporting statutes, I dismiss Doe's fourth cause of action with prejudice and without leave to amend.

**Conclusion**

IT IS THEREFORE ORDERED that the Church of Jesus Christ of Latter-Day Saints' motion to dismiss **[ECF No. 21] is GRANTED.** All of Plaintiff Doe's claims against the church are dismissed **with leave to amend** only her negligence claim based on a voluntary undertaking theory of liability **within 10 days.**

U.S. District Judge Jennifer A. Dorsey
October 21, 2026

---

[48] *C.f. Elkins v. Moreno*, 435 U.S. 647, 666 (1978) (finding that "Congress' silence is pregnant" when it fails to specify an obligation in legislation that otherwise provides a "comprehensive and complete" treatment of the issue).

[49] *Arbaugh v. Bd. of Educ.*, 591 S.E.2d 235, 241 (W. Va. 2003); *C.B. v. Bobo*, 659 So.2d 98, 102 (Ala.1995); *Perry v. S.N.*, 973 S.W.2d 301, 309 (Tex.1998); *Marquay v. Eno*, 662 A.2d, 272, 278 (N.H. 1995); *Kansas State Bank & Tr. Co. v. Specialized Trans. Serv., Inc.*, 819 P.2d 587, 603–604 (Kan. 1991); *Valtakis v. Putnam*, 504 N.W.2d 264, 266 (Minn. App. 1993); *Cechman v. Travis*, 414 S.E.2d 282, 283–84 (Ga. App. 1991); *Bradley v. Ray*, 904 S.W.2d 302, 312–14 (Mo. App. 1995); *Fischer v. Metcalf*, 543 So.2d 785, 788–91 (Fla. App. 1989); *Borne by Borne v. Northwest Allen Cnty. Sch. Corp.*, 532 N.E.2d 1196, 1203 (Ind. App. 1989).

[50] *Marquay*, 662 A.2d at 278.